1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                   **CENTRAL DISTRICT OF CALIFORNIA**
10
11

| | |
|---|---|
| NELSON MOTIVATION, INC. and BOB NELSON, | CV 16-1843-RSWL-MRWx |
| Plaintiffs, | **ORDER** re: Defendant David Olson's Motion to Dismiss for Lack of Personal Jurisdiction [14] |
| v. | |
| WALTON MOTIVATION, INC; DAVID OLSON; and DOES 1-10, | |
| Defendants. | |

    Currently before the Court is Defendant David Olson's ("Olson") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction [14] ("Motion").  Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **DENIES** the Motion.
/ / /

1

# I. BACKGROUND

Plaintiff Nelson Motivation, Inc. ("NMI") is a California corporation located in San Diego, California. Compl. ¶ 2, ECF No. 1. NMI is in the business of providing management training and consulting. Id. at ¶ 16.

Plaintiff Dr. Bob Nelson ("Nelson") is an individual residing in San Diego.[1] Id. at ¶ 3. Nelson is the president of NMI. Id. at ¶ 16. Nelson is also a leading expert on employee motivation, performance, engagement, recognition, and rewards. Id. at ¶ 12. Nelson assigned to NMI his copyright rights in the works entitled "1501 Ways to Reward Employees" and "1001 Ways to Reward Employees" (collectively, "the Works"), which are the subject of U.S. Copyright Registration Nos. TX 7-547-752, TX 6-196-443, and TX 3-789-192. Id. at ¶ 15.

Defendant Walton is a Pennsylvania corporation. Id. at ¶ 4. Defendant Olson is an individual residing in Allentown, Pennsylvania and is an officer of Walton. Id. at ¶ 5.

On or about April 20, 2010, NMI entered into a license agreement (the "License Agreement") with Walton, granting Walton the right to use Plaintiffs' intellectual property, including Plaintiffs' trademarks, copyrights in the Works, and Nelson's

---

[1] Collectively, NMI and Nelson are "Plaintiffs."

2

likeness.[2]  Id. at ¶ 17.

In April 2015, the License Agreement terminated. Id. at ¶¶ 20-21.  Defendants, however, allegedly continued to use Plaintiffs' name, likeness, and the Works in advertising their software service, RecognitionPRO.  Id. at ¶ 21.

Plaintiffs demanded that Defendants cease all use of Plaintiffs' name, likeness, and the Works, but Defendants allegedly failed to comply.  Id. at ¶ 23.

On March 17, 2016, Plaintiffs filed a Complaint [1] against Defendants alleging seven claims: (1) federal copyright infringement; (2) breach of contract; (3) misappropriation of name and likeness under California law; (4) violation of the right of publicity under California law; (5) declaratory relief; (6) California unfair competition; and (7) common law unfair competition.  Plaintiffs allege in their Complaint that Olson had full knowledge of the infringement and misappropriation of Nelson's likeness, and individually directed the infringing acts and omissions.  Id. at ¶ 24.  Plaintiffs further allege that Olson provided for the forfeiture of Nelson's shares to gain a personal profit.  Id.

Olson filed the instant Motion [14] on May 20,

---

[2] As a part of Nelson's compensation for the License Agreement, he was granted eight of the one hundred original shares in Walton.  Compl. ¶ 18.  Nelson subsequently acquired one additional share, and his nine shares were split ten to one, becoming ninety total shares of stock.  Id.

3

2016.  Plaintiffs' Opposition [15] and Olson's Reply [16] were timely filed, and the Motion was taken under submission on June 24, 2016.

## II. DISCUSSION

**A.    Legal Standard**

   1.    Federal Rule of Civil Procedure 12(b)(2)

An action may be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  On a Rule 12(b)(2) motion, the plaintiff bears the burden to demonstrate that the court may properly exercise jurisdiction over the defendant.  Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006); Barantsevich v. VTB Bank, 954 F. Supp. 2d 972, 981 (C.D. Cal. 2013).  Absent formal discovery or an evidentiary hearing, the plaintiff need only make a prima facie showing that jurisdiction is proper to survive dismissal.  Pebble Beach, 453 F.3d at 1154.

To satisfy this burden, the plaintiff can rely on the allegations in the complaint to the extent they are not controverted by the moving party.  Barantsevich, 954 F. Supp. 2d at 982; Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001) ("Where not directly controverted, plaintiff's version of the facts is taken as true for purposes of a 12(b)(2) motion to dismiss.").  If defendants adduce evidence controverting the allegations, however, the plaintiff must "come forward with facts, by affidavit or

4

1  otherwise, supporting personal jurisdiction."
2  Barantsevich, 954 F. Supp. 2d at 982 (quoting Scott v.
3  Breeland, 792 F.2d 925, 927 (9th Cir. 1986)).
4  Conflicts between the parties over statements contained
5  in affidavits or declarations must be resolved in
6  plaintiff's favor.  Schwarzenegger v. Fred Martin Motor
7  Co., 374 F.3d 797, 800 (9th Cir. 2004); Love v.
8  Associated Newpapers, Ltd., 611 F.3d 601, 608 (9th Cir.
9  2010).  "At the same time, however, the plaintiff must
10 submit admissible evidence in support of its prima
11 facie case."  Am. Inst. of Intradermal Cosmetics, Inc.
12 v. Soc'y of Permanent Cosmetic Prof'ls, No. CV 12-06887
13 GAF (JCGx), 2013 WL 1685558, at *4 (C.D. Cal. Apr. 16,
14 2013).

**B.  Discussion**

"[P]ersonal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process."  Pebble Beach, 453 F.3d at 1154-55.  California authorizes jurisdiction to the full extent permitted by the Constitution.  See Cal. Code Civ. Proc. § 410.  Therefore, the only question this Court must ask is whether the exercise of jurisdiction over Olson would be consistent with due process.  Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003).

Due process requires that a defendant must have such "minimum contacts" with the forum state that

5

"maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The minimum contacts requirement means that the defendant must have purposefully availed himself of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of the forum's laws. See Asahi Metal Indus. Co. v. Sup. Ct. of Cal., 480 U.S. 102, 109 (1987).

There are two recognized bases for exercising jurisdiction over a non-resident defendant: (1) "general jurisdiction," which arises where defendant's activities in the forum are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over him in all matters; and (2) "specific jurisdiction," which arises when a defendant's contacts with the forum give rise to the claim in question. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984); Doe v. Am. Nat'l Red Cross, 112 F.3d 1048, 1050-51 (9th Cir. 1997).

    1.   Jurisdiction Over an Employee

Olson argues that he is merely an officer of Walton, and Walton's contacts with California cannot be imputed to him to establish personal jurisdiction. Reply 5:19-20. Olson argues that he, as an individual, does not have sufficient contacts with California to establish personal jurisdiction. Id. at 6:7-11.

The Supreme Court has explained that employees' "contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually." <u>Calder v. Jones</u>, 465 U.S. 783, 790 (1984); <u>see also</u> <u>Rush v. Savchuk</u>, 444 U.S. 320, 332 (1980).

As discussed below, Plaintiffs have alleged sufficient facts to demonstrate that this Court has specific personal jurisdiction over Olson. Olson's status as an officer of Walton does not insulate him from personal jurisdiction.

2. <u>Specific Personal Jurisdiction</u>

The Ninth Circuit has established a three-prong test for analyzing a claim of specific personal jurisdiction:

> "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related

```
         activities; and
         (3) the exercise of jurisdiction must comport
         with fair play and substantial justice, i.e.,
         it must be reasonable."
```
Schwarzenegger, 374 F.3d at 801-802.

The plaintiff bears the burden to satisfy the first two prongs of the test. Id. at 802. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. Id. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985)).

      a. *Purposeful Availment or Direction*

Under the first prong of the three-part specific jurisdiction test, the plaintiff must establish that the defendant either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California. Id. "A purposeful availment analysis is most often used in suits sounding in contract." Id. (citing Unocal Corp., 248 F.3d at 924). "A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." Id. (citing Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002)). Although Plaintiffs assert both contract and

tort claims against Defendants, this suit sounds in tort, as Plaintiffs primarily seek relief for copyright infringement and related causes of action. Therefore, the Court applies a "purposeful direction" analysis.

In tort cases, courts apply an "'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." Yahoo! Inc. v. La Ligue Contre Le Racisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (citations omitted). This test, also known as the Calder[3] effects test, requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Id. (citation omitted). All three parts of the test must be satisfied. Schwarzenegger, 374 F.3d at 805.

          i.   *Intentional Act*

For the first element, "intent" refers to "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." Schwarzenegger, 374 F.3d at 806. In Calder, for example, the intentional acts committed by the reporter and editor were the researching, writing, editing, and publishing of an allegedly libelous tabloid news article, all of which

---

[3] Calder v. Jones, 465 U.S. 783 (1984).

occurred in Florida. 465 U.S. at 789.

Here, Olson allegedly committed several intentional acts. First, he traveled to California to solicit and transact business with Plaintiffs. See Decl. of Dr. Bob Nelson ("Nelson Decl.") ¶¶ 2-5, ECF No. 15-1. While in California, the parties entered into the License Agreement, and Olson personally executed the License Agreement. Id. at ¶¶ 4-5. Olson subsequently made multiple trips to meet with Plaintiffs in relation to the License Agreement, and directed Plaintiffs to conduct all substantial deliverables under the License Agreement in California. Id. at ¶¶ 5-6.

Moreover, Olson allegedly committed an intentional act when he directed Walton to use Plaintiffs' property after the License Agreement had expired, as alleged in the Complaint and demonstrated by an email from Olson acknowledging such use. Compl. ¶ 24; Decl. of Ben T. Lila ("Lila Decl."), Ex. B, ECF No. 15-2. The email shows that Olson exercises control over Walton's website, and personally instructed the web developer to remove Plaintiffs' property from the site. Lila Decl., Ex. B; see also Suppl. Decl. of David Olson ("Suppl. Olson Decl.") ¶ 7, ECF No. 16-1. However, not all of Plaintiffs' information was removed. Lila Decl., Ex. B.

Lastly, Olson's alleged action in forfeiting Nelson's shares for personal profit is an intentional act. See Compl. ¶ 24.

ii. *Express Aiming*

The second element of the Calder effects test requires that the defendant's conduct be expressly aimed at the forum. Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1129 (9th Cir. 2010). Express aiming "is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1087 (9th Cir. 2000); see also Calder, 465 U.S. at 788.

Here, Olson's intentional, and allegedly tortious, actions were expressly aimed at Plaintiffs in California. This is not a case of "mere untargeted negligence," which separates it from cases in which courts have found the effects test unsatisfied. Bancroft, 223 F.3d at 1088.

Olson made three trips to California in connection with the Licensing Agreement. Olson Decl. ¶ 14; Nelson Decl. ¶¶ 3-6. During these trips, Olson met with Plaintiff Nelson, and signed the Licensing Agreement which gave rise to Plaintiffs' Complaint.[4] Nelson Decl. ¶¶ 5-6. The License Agreement which makes clear that Plaintiffs' place of business is in San Diego,

---

[4] Although the parties dispute where the Licensing Agreement was signed, Plaintiffs' declarations are taken as true on a Rule 12(b)(2) motion to dismiss. See Schwarzenegger, 374 F.3d at 800.

11

California. License Agreement, Ex. B to Compl., ECF No. 1-1. Thus, Olson knew that his allegedly tortious actions in (1) directing Walton to continue to use Plaintiffs' property after termination of the License Agreement, and (2) forfeiting Nelson's shares to gain a personal profit, would have a potentially devastating impact on NMI, a California corporation, and Nelson, a California resident. Compl. ¶¶ 24, 49-53.

### iii.   *Foreseeable Harm*

The final element of the <u>Calder</u> effects test requires that Olson's conduct caused harm that he knew was likely to be suffered in the forum. <u>Brayton Purcell</u>, 606 F.3d at 1131 (citation omitted). This element is satisfied when defendant's intentional act has "foreseeable effects" in the forum. <u>Id.</u>

In <u>Brayton Purcell</u>, the Ninth Circuit found this element to be satisfied because the plaintiff would be harmed by infringement of its copyright, and it was foreseeable that some of this harm would occur in the forum where the plaintiff was known to reside. <u>Id.</u> The Ninth Circuit emphasized the plaintiff's allegations that "a substantial part of the events giving rise to the claims occurred in [the forum]" and that the defendant committed its "infringing acts . . . knowing [plaintiff] is a resident of this [forum] and would suffer any injuries from Defendants' conduct in this District." <u>Id.</u>

Similarly here, Plaintiffs would be harmed by

12

infringement of their copyrights, misappropriation of their likeness, and violation of their right of publicity. Olson knew that Plaintiffs were located in California, and therefore, it is foreseeable that some of this harm would occur in California. Moreover, Plaintiffs allege in their Complaint that "a substantial part of the events or omissions giving rise to the claims herein occurred in this district." Compl. ¶ 11. Accordingly, Plaintiffs have alleged sufficient facts to make a prima facie showing that Olson knew that the harm caused by his alleged conduct was likely to be suffered in California.

In sum, Plaintiffs have satisfied the "purposeful direction" prong for specific personal jurisdiction.

        b. *Arising From Forum-Related Activities*

The Ninth Circuit employs a "but for" test to determine whether a claim arises from forum-related activities. Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995). In Ballard, the court found that if the defendant had not done business in the United States, the plaintiff would not have a claim against them. Id. Ballard is similar to this case. If Olson had not entered into the License Agreement with Plaintiffs in California, there would be no claim against him. Plaintiffs have made a prima facie showing that their claims arise from Olson's forum-related activities.

/ / /

   c. *Reasonableness*

Once it has been decided that a defendant purposefully established minimum contacts within the forum state, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." Burger King v. Rudzewicz, 471 U.S. 462, 476 (1985) (citing Int'l Shoe, 326 U.S. at 320). Where a defendant purposefully directs his activities at forum residents, he must present a "compelling case" that the presence of some other considerations would render jurisdiction unreasonable. Id. at 477.

Here, Plaintiffs have established that the first two prongs for the exercise of specific personal jurisdiction are satisfied. This places the burden on Olson to present a compelling case that jurisdiction is unreasonable. Burger King, 471 U.S. at 476-77.

When addressing the question of reasonableness, the Ninth Circuit balances seven factors: (1) the extent of defendant's purposeful interjection; (2) the burden on the defendant; (3) conflicts of law between the forum and defendant's home jurisdiction; (4) the forum's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir.

1991). The Court addresses each factor below.

      i. *Purposeful Interjection*

The factor of purposeful interjection is analogous to the purposeful direction analysis discussed above. Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1199 (9th Cir. 1988). There is no need to analyze this factor separately. Roth, 942 F.2d at 623. As discussed above, Olson's actions were purposefully directed toward California residents. Accordingly, this factor weighs strongly in favor of finding that the exercise of personal jurisdiction over Olson is reasonable.

      ii. *Defendant's Burden in Litigating*

Olson argues that the burden on him to litigate is California is "both obvious and onerous." Mot. 9:23-25. Although it may be more burdensome for Olson to litigate here than for him to litigate in Pennsylvania, "unless such inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." Roth, 942 F.2d at 623. Olson does not make a compelling case that the inconvenience here is so great as to deprive him of due process. Nonetheless, this factor slightly favors Olson.

      iii. *Extent of Conflict with Sovereignty of Defendant's State*

The third factor involves evaluating the extent of any conflict with the sovereignty of the defendant's

home state. Allstar Mktg. Grp., LLC v. Your Store Online, LLC, 666 F. Supp. 2d 1109, 1124-25 (C.D. Cal. 2009). "Litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." Sinatra, 854 F.2d at 1199. Olson, however, is a citizen of Pennsylvania rather than of a foreign nation. Accordingly, any conflicting sovereignty interests can be accommodated through choice-of-law rules, and this factor does not weigh heavily in the Court's assessment of reasonableness. See Allstar, 666 F. Supp. 2d at 1125. This factor is neutral.

### iv. *Forum State's Interest*

The fourth factor is California's interest in adjudicating the controversy. "California maintains a strong interest in providing an effective means of redress for its residents tortiously injured." Sinatra, 854 F.2d at 1200. Accordingly, California possesses a clear interest in protecting Plaintiffs as California residents. This factor supports the reasonableness of an exercise of jurisdiction in this case.

### v. *Efficient Judicial Resolution*

The fifth factor focuses on the location of the evidence and witnesses. Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1323-24 (9th Cir. 1998). Nothing in the record suggests that California is a

16

more or less efficient location than an alternate forum. This factor is neutral.

###### vi. *Convenient and Effective Relief for Plaintiffs*

The sixth factor is the importance of the forum to plaintiff's interest in convenient and effective relief. "[N]either the Supreme Court nor the Ninth Circuit has given much weight to inconvenience to the plaintiff." Allstar, 666 F. Supp. 2d at 1125 (quoting Ziegler v. Indian River Cnty., 64 F.3d 470, 476 (9th Cir. 1995)). Nothing in the record establishes that effective relief is more available to Plaintiffs in California than in an alternate forum. As with the fifth factor above, this factor is neutral.

###### vii. *Alternative Forum*

The final factor is the availability of an alternate forum. Plaintiff bears the burden of proving the unavailability of an alternative forum. Ziegler, 64 F.3d at 476. Here, Plaintiffs do not show that Pennsylvania is unavailable as an alternative forum. This factor weighs in favor of Olson.

###### viii. *Conclusion*

In sum, factors 2 and 7 (burden on defendant and available alternate forum) favor Olson. Factors 3, 5, and 6 (Pennsylvania's sovereignty interests, efficiency, and convenience and effectiveness of relief) are neutral. Factors 1 and 4 (degree of interjection and California's interest) weigh

17

significantly in favor of Plaintiffs.

On balance, Olson does not present a "compelling case" that this Court's exercise of jurisdiction would be unreasonable, especially given the significance of factors 1 and 4.  Olson therefore fails to overcome the presumption that exercising jurisdiction would be reasonable.  See Roth, 942 F.2d at 625.

### III. CONCLUSION

For these reasons, the Court finds that Plaintiffs make a prima facie showing that the exercise of specific personal jurisdiction is proper.  Accordingly, the Court **DENIES** Olson's Motion.

**IT IS SO ORDERED.**


DATED: July 29, 2016          s/ RONALD S.W. LEW

                              **HONORABLE RONALD S.W. LEW**
                              Senior U.S. District Judge